CHESTERFIELD FIRE PROTECTION DISTRICT OF ST. LOUIS COUNTY, et al., Plaintiffs-Respondents,

v.

ST. LOUIS COUNTY, Missouri, et al., Defendants-Appellants.

No. 64066.

Supreme Court of Missouri, En Banc.

Jan. 11, 1983.

Rehearing Denied Feb. 23, 1983.

Thomas W. Wehrle, County Counselor Andrew J. Minardi, Assoc. County Counselor Clayton, for defendants-appellants.

Jack J. Cavanaugh, William E. Albrecht, Clayton, Homer N. Mastorakos, Paul A. Hennerick, III, Chesterfield, for plaintiffs-respondents.

Chester A. Love, Daniel P. Card II, Clayton, for intervenor-respondent.

HIGGINS, Judge.

St. Louis County appeals from summary judgment that an amendment to the St. Louis County Charter which authorized establishment of a fire standards commission is unconstitutional on grounds it exceeds the powers granted St. Louis County by article VI, section 18(c) of the Missouri Constitution. The Court of Appeals, Eastern District, affirmed, and the appeal was transferred by this Court. The questions are whether article VI, section 18(c) grants the County power to establish a fire standards commission as set out in the charter amendment; and whether the charter amendment conforms to the provisions of article VI, section 18(c). The amendment is constitutional; the judgment is reversed.

In November, 1979, the voters of St. Louis County approved an amendment to the County Charter which provided for the establishment and maintenance of a fire standards commission. The purpose of the commission is to establish and regulate minimum training and educational standards for those acting as firefighters in the County.[1]

1. The charter amendment provides:

Section 6.040. 1. There shall be a fire standards commission composed of seven residents of the county who shall be appointed by the county executive, subject to confirmation by the council. One member shall be a chief of a fire protection district. Two members shall be elected fire protection district directors, two shall be elected municipal officials and one shall be a citizen who is neither a fire chief, elected municipal official or fire protection district director. Of the members appointed first after the adoption of this section, two shall be appointed for one-year terms, two shall be appointed for two-year terms and three shall be appointed for three-year terms, but thereafter all members shall serve a term of three years, except those appointed to fill a vacancy occurring during the term of a member.

2. The commission shall have the power to establish and provide minimum training and educational standards and to issue regulations for any person performing the duties of a firefighter for any municipality, fire protection district, or other public agency. The training and educational standards adopted by the commission shall be reasonably related to the position of firefighter. Any person who is employed or appointed as a firefighter after the effective date of the standards established by the commission who fails to meet such standards within six months of the beginning of such service shall be terminated. Thereafter, such person shall not be eligible for employment or appointment as a firefighter by any other municipality, fire protection district, or other public agency for a period of one year after his date of termination unless such person successfully meets the standards established by the commission. The minimum training and educational standards established by the commission shall not apply to volunteer firefighters, any person who served as a firefighter for twelve consecutive months prior to the adoption of this section, and any person appointed to the position of firefighter during a state of emergency declared by the county executive. Penalties for the violation of training and educational standards or the regulations promulgated by the commission shall be prescribed by ordinance. The expenses of the commission under this section shall be financed by the county general revenue fund or by grants from the State of Missouri or United States Government.

The Chesterfield, Ballwin, Eureka, and West Overland Fire Protection Districts petitioned for declaratory judgment that the amendment was unconstitutional and for injunctive relief; Community Fire Protection District was permitted to intervene as a plaintiff. Plaintiffs contend the education and training of firefighters is a statewide concern which the legislature delegated to the fire protection districts. Plaintiffs and defendant, County, filed cross motions for summary judgment; the trial court granted summary judgment in favor of plaintiffs. The Eastern District affirmed there was no constitutional grant of authority which allowed the County to pass such a charter amendment. The decision was based on the court's interpretation of "services and functions" as "interchangeable generic terms." This interpretation would permit the County to assume the responsibility of fire protection entirely but preclude a bifurcation of responsibilities which would result in a "collateral and coextensive" exercise of power by the County and fire protection district.

## I.

 The rules applicable to statutory construction are applicable to construction of constitutional provisions; the latter are given a broad construction due to their more permanent nature. *Boone County Court v. State,* 631 S.W.2d 321, 324 (Mo. banc 1982); *State ex inf. Martin v. City of Independence,* 518 S.W.2d 63, 65 (Mo. banc 1974). The rules of construction are designed to give effect to the intent and purpose of the provision. *Boone County,* 631 S.W.2d at 324. Words used in a constitutional provision must be accorded the meaning which the people understood them to have when the provision was adopted. *State ex inf. Danforth v. Cason,* 507 S.W.2d 405, 408 (Mo. banc 1973). The meaning of words as understood by the people is presumed to be the plain and ordinary meaning

derived from the dictionary. *Boone County,* 631 S.W.2d at 324; *Cason,* 507 S.W.2d at 408–09.

Article VI, section 18(c) as amended in 1970 reads:

*Provisions authorized in county charters—participation by county in government of other local units.* The charter may provide for the vesting and exercise of legislative power pertaining to any and all services and functions of any municipality or political subdivision, except school districts, in the part of the county outside incorporated cities; and it may provide, or authorize its governing body to provide, the terms upon which the county may contract with any municipality or political subdivision in the county and perform any of the services and functions of any such municipality or political subdivision.

The charter may provide for the vesting and exercise of legislative power pertaining to any and all services and functions of any municipality or political subdivision, except school districts, throughout the entire county within as well as outside incorporated municipalities; any such charter provision shall set forth the limits within which the municipalities may exercise the same power collaterally and coextensively. When such a proposition is submitted to the voters of the county the ballot shall contain a clear definition of the power, function or service to be performed and the method by which it will be financed.

Mo. Const. art. VI, § 18(c). This provision authorizes a charter county to enact legislation concerning "any and all services and functions of any municipality or political subdivisions, except school districts...." Mo. Const. art. VI, § 18(c). If establishment of a fire standards commission which promulgates educational and training requirements for firefighters is a "service" or

---

3. The commission shall, as authorized by ordinance, operate and maintain training facilities for the instruction and training of firefighters. The expenses for operation and maintenance of training facilities shall be defrayed by the fire protection district, municipality, or other public agency in proportion to its use of the facilities or by grants from the State of Missouri or United States Government.

a "function," the county charter amendment is constitutional.

Neither "service" nor "function" is defined in article VI of the Missouri Constitution; therefore, they will be accorded their plain, ordinary, and natural meanings. *Boone County,* 631 S.W.2d at 324. The word "service" is defined as "an act done for the benefit of another...." Webster's Third New International Dictionary 2975 (1964). "Function" is defined as "the action ... for which a thing exists: the activity appropriate to the nature or position of a ... thing...." *Id.* at 921. Both words encompass similar meaning; however, were the terms intended to have the same meaning "the use of only one of them would be necessary, and the other would be surplusage, included for no reason. Such construction is not favored." *Boone County,* 631 S.W.2d at 325; *see Rathjen v. Reorganized School District R–II of Shelby County,* 365 Mo. 518, 529, 284 S.W.2d 516, 523 (Mo. banc 1955). By definition, "function" includes all activity appropriate to the nature of a thing. "Service" is a narrow term referring to a specific act or goal. Therefore, functions are those activities appropriate to the nature of a thing which combine to produce an act or goal. In the context of the amendment, a "function" is all of the activity appropriate to the nature of political subdivisions or municipalities which combine to produce services, those specific acts performed by political subdivisions or municipalities for the benefit of the general public.

The establishment of standards which must be met by those who protect the public from fire is a function of fire protection districts, political subdivisions of this state. §§ 321.010, 321.600 RSMo 1978 & Supp.1981–82; *see also Vorhof Construction Co. v. Black Jack Fire Protection Dist.,* 454 S.W.2d 588, 594 (Mo.App.1970); *Wellston Fire Protection Dist. v. Wellston State Bank & Trust Co.,* 282 S.W.2d 171, 176 (Mo.App.1955). Article VI, section 18(c) permits the County to amend its charter and "provide for the vesting and exercise of legislative power pertaining to any and all services and functions of any ... political subdivision, except school districts...." Mo. Const. art. VI, § 18(c). The charter amendment in question provides for the exercise of legislative power pertaining to a function of a political subdivision which is not a school district. The County may amend its charter so as to exercise legislative power pertaining to establishment of training and educational standards for firefighters in the County.

Respondents cite *Flower Valley Shopping Center, Inc. v. St. Louis County,* 528 S.W.2d 749 (Mo. banc 1975), and argue the County has no power to establish training and educational standards for firefighters. Such reliance is misplaced. In that case, Flower Valley challenged a St. Louis County ordinance which required certain shopping centers to provide armed security patrols in their parking lots. The Court held the ordinance invalid because it lacked "constitutional or statutory authority more explicit than is found in article VI, section 18(b)...." *Flower Valley,* 528 S.W.2d at 754. The Court found no implied power in section 18(b) which the County could exercise to enact such an ordinance.

The present case does not involve the implied power found in section 18(b); it does involve the express power granted in section 18(c): "the vesting and exercise of legislative power pertaining to any and all services and functions of any municipality or political subdivision...." Mo. Const. art. VI, § 18(c); *see Flower Valley,* 528 S.W.2d at 754.

## II.

Remaining for determination is whether the requirements set out in section 18(c) which pertain to such charter provisions were followed. The second paragraph of section 18(c) requires a charter amendment when the County seeks to exercise countywide legislative power. This requirement has been met by the County.

Respondents argue the charter amendment is invalid because it pertains to "the entire county within as well as outside

incorporated municipalities ... [but does not] set forth the limits within which the municipalities may exercise the same power collaterally and coextensively." *See* Mo. Const. art. VI, § 18(c). Respondents' argument is based on an interpretation of the second paragraph of section 18(c) which provides:

> The charter may provide for the vesting and exercise of legislative power pertaining to any and all services and functions of any municipality or political subdivision, except school districts, throughout the entire county within as well as outside incorporated municipalities; any such charter provision shall set forth the limits within which the municipalities may exercise the same power collaterally and coextensively. When such a proposition is submitted to the voters of the county the ballot shall contain a clear definition of the power, function or service to be performed and the method by which it will be financed.

Mo. Const. art. VI, § 18(c). This provision requires that the charter clearly define the extent to which the County is now exercising a service or function once provided by a municipality or political subdivision. Further, when the function or service has countywide effect, within as well as outside municipalities, the charter provision which allows the County to perform this service or function must set out "the limits within which the municipalities may exercise the same power collaterally and coextensively." *Id.* This provision is designed to eliminate confusion when the County begins providing a service or function which may also be provided by a municipality. Application of this provision is necessarily based on the assumption that the municipality has some power to provide the service or function involved. There is no purpose in defining the limits a charter provision places on power the municipality never had. Municipalities have no power regarding the training and education of firefighters; this power is granted to fire protection districts. *See* §§ 321.010–321.690 RSMo 1978 & Supp. 1981–82. Because municipalities have no power in this area, the charter amendment need not set out the limits within which municipalities could collaterally and coextensively exercise this power with the County.

The charter amendment is constitutional; the judgment of the trial court is reversed.

RENDLEN, C.J., WELLIVER, GUNN, DONNELLY, JJ., SEILER, Senior Judge, and MAUS, Special Judge, concur.

BILLINGS, J., not sitting.

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.